UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JESSICA M. PATRICK and MIKEL G. PATRICK,<br><br>              Plaintiff,<br><br>      v.<br><br>BONNER COUNTY SHERIFF'S DEPARTMENT KATIE RIVERA; BONNER COUNTY SHERIFF DEPUTY TIMOTHY HEMPHILL, and DOES 1 - 10<br><br>              Defendants. | Case No. 2:11-CV-00113-EJL-REB<br><br>**MEMORANDUM ORDER AND DECISION** |

**INTRODUCTION**

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment. The Motion was filed on November 15, 2012. As of the date of this Order, the Plaintiffs have not filed a response. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively

**MEMORANDUM ORDER AND DECISION- 1**

finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the seizure of a number of animals from the Plaintiffs' property on January 7, 2009. The Plaintiffs, Jessica M. Patrick and Mikel G. Patrick (collectively "the Patricks"), resided in Bonner County, Idaho. On January 7, 2009 Bonner County Sheriff's Deputy Timothy Hemphill responded to a call for a child welfare check at the Patrick's residence. Deputy Hemphill did not locate any individuals at the residence but did observe several animals in pens at the property: five horses and one llama. Based on his observations, Deputy Hemphill believed the animals to be malnourished with no apparent source for food or water. Deputy Hemphill requested that Bonner County Sheriff's Detective Katie Rivera respond to the property to evaluate the animals. Detective Rivera then contacted Idaho Department of Agriculture Investigator Amity Larsen and both Detective Rivera and Investigator Larsen responded to the residence. Based upon her observations of the animals, Investigator Larsen recommended that the Bonner County Sheriff's Office take custody of the animals, which they did. The Patricks were each charged with seven counts of animal cruelty pursuant to Idaho Code § 25-3504.[1]

---

[1] The seven counts were for each of the six animals seized on January 7, 2009 and for a horse that had been found dead on the property on the same date.

**MEMORANDUM ORDER AND DECISION- 2**

The Patricks plead not guilty to the charges in state court and filed a motion to suppress challenging the seizure of the animals. Ultimately, on July 21, 2009, Bonner County Magistrate Judge Debra Heise entered an order granting the Patricks' motion to suppress finding the officers did not have probable cause to believe the crime of animal cruelty had been committed and, therefore, the warrantless search and seizure was unconstitutional. The charges in the state case were dismissed. The Patricks then filed this civil action against the Defendants pursuant to § 1983. Defendants have filed the instant Motion for Summary Judgment which the Court now takes up.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof

**MEMORANDUM ORDER AND DECISION- 3**

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

---

[2] *See also,* Rule 56(3) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM ORDER AND DECISION- 4**

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

### 1.       Failure to Respond to the Motion for Summary Judgment

District Courts may establish local rules of procedure that have the force of law. Fed. R. Civ. P. 83(a)(1). In this District, Local Civil Rule 7.1 controls when a response must be filed to a motion and states that the responding party must file its response within twenty-one days after service upon the party of the motion and memorandum by the moving party. D. Idaho L. Civ. R. 7.1(c).[3] The  Rule further provides that failure to respond to a motion may be deemed consent to the granting of the motion. *See* D. Idaho L. Civ. R. 7.1(e). Here, the Patricks are represented by counsel and have not filed a response to the Motion for Summary Judgment and the time for doing so has passed. Attorneys practicing in a federal district court are charged with knowledge of the local rules the same as they are charged with knowledge of the Federal Rules of Civil Procedure.

---

[3]D. Id. L. Civ. R. 7.1(c)(1) provides in part:
The responding party <u>shall</u> serve and file a response brief . . . . The responding party <u>shall</u> serve and file with the response brief any affidavits, declarations..., copies of all photographs, documentary evidence, and other supporting materials on which the responding party intends to rely. (Emphasis added.)

**MEMORANDUM ORDER AND DECISION- 5**

A motion for summary judgment, however, cannot be granted solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The court may grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), overruled on other grounds by *Degen v. United States*, 517 U.S. 820 (1996); *see also Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet burden of demonstrating absence of genuine issue for trial). Accordingly, this Court will evaluate whether the Defendants' Motion and supporting materials are sufficient and do not facially reveal the existence of a genuine issue of material fact in this case.

## 2.    Impact of the Underlying State Court Ruling

As an initial matter, the Court has considered what preclusive effect, if any, arises from the state court's ruling in the underlying criminal matter granting the Patricks' motion to suppress. In their Complaint, the Patricks represent that the state court found no probable cause existed to support a reasonable belief that a crime had been committed so as to justify the warrantless seizure of the animals. (Dkt. 1 at 8-9.) The Defendants agree that the state

court granted the Patricks' motion to suppress and found that the law enforcement officers illegally seized the Patricks' animals. (Dkt. 22 at 3.)

Section 1983 actions must afford full faith and credit to state judicial proceedings such that *res judicata* and other preclusion doctrines may operate to limit or exclude causes of action in federal court. *See Allen v. McCurry*, 449 U.S. 90, 103–104 (1980); *Strong v. Dep't of Corr.*, 2006 WL 47358, at *2 (D. Idaho 2006) (citations omitted). "To determine whether a state judgment should have preclusive effect in a federal action, federal courts apply the state's rules governing preclusion." *Strong*, 2006 WL 47358, at *2 (citation omitted). The Idaho Supreme Court has stated that "*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel). Under principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Lohman v. Flynn*, 78 P.3d 379, 386 (Idaho 2003) (citations omitted); *see also Coeur d'Alene Tribe v. Asarco Inc.*, 280 F.Supp.2d 1094, 1117-19 (D. Idaho 2003) ("Although the literal definition of the term *res judicata* is expansive enough to cover both preclusion of relitigation of the same cause of action and relitigation of the same issue, the modern tendency is to refer to the aspect of the doctrine that precludes relitigation of the same issue in a separate cause of action as collateral estoppel, and to refer to that aspect preventing relitigation of the same cause of action as *res judicata*.") (quotations and citations omitted)).

**MEMORANDUM ORDER AND DECISION- 7**

"*Res judicata* thus applies to protect litigants from the burden of litigating the same cause of action with the same party or its privity." *Coeur d'Alene Tribe*, 280 F.Supp.2d 1094, 1117-19 (D. Idaho 2003) (citing *Hindmarsh v. Mock*, 57 P.3d 803 (Idaho 2002)). *Res judicata* "bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." *Lohman*, 78 P.3d at 386 (citing *Hindmarsh*, 57 P.3d at 805 (citations omitted)). For *Res judicata* to preclude litigation the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question. *Coeur d'Alene Tribe*, *supra* (citations omitted). "The purposes of these judicially created rules are to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." *Id.* (citation omitted).

As to collateral estoppel, the Idaho Supreme Court has delineate five factors that "must be considered in determining whether collateral estoppel will act as a bar":

> 1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; 2) the issue decided in the prior litigation was identical to the issue presented in the present action; 3) the issue sought to be precluded was actually decided in the prior litigation; 4) there was a final judgment on the merits in the prior litigation; and 5) the party against whom the issue is asserted was a party or in privity with a party to the prior litigation.

*Lohman*, 78 P.3d at 386 (citation omitted).

The Defendants in this case argue the state court's ruling on the Patricks' motion to suppress in the underlying criminal case has no preclusive effect here because there is no privity; asserting Deputy Hemphill and Detective Rivera were not parties to the state court proceedings and, therefore, did not have a full and fair opportunity to litigate the issues presented in that case. (Dkt. 22 at 7-8.) The Court agrees.

Neither Deputy Hemphill or Detective Rivera were parties to the criminal case against the Patricks. As such, they were not represented by counsel in those proceedings, had no individualized personal interest in the outcome of the criminal proceeding, had no control over the criminal proceeding, and were not bound by the outcome. *See e.g. Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005) (applying Ohio state law); *Adams v. Nocon*, No. CIV. S-07-02083 FCD EFB, 2009 WL 799278, at *4 (E.D. Cal. Mar. 23, 2009). Because there is no privity between the state criminal case and this civil action, the Court finds that the underlying state court ruling on the Patricks' Motion to Suppress has no preclusive effect in this case.

**3.    Section 1983 Claim**

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

**MEMORANDUM ORDER AND DECISION- 9**

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). In this case the first requirement is not in dispute. Police officers carrying out their duties act under color of law. Thus it is the second requirement that is at issue here. The Patrick's contend that the constitutional rights violated in this case are the right to: be free from unreasonable search and seizure, substantive and procedural due process, and equal protection. (Dkt. 1.) The Complaint also asserts a claim for municipal liability. Defendants maintain that no rights were violated.

The rights claimed to have been violated here are protected by the federal Constitution in the Fourth and Fourteenth Amendment guarantees against unlawful seizure and due process. The question presented in this case is whether those constitutional rights were violated in this case and, if so, whether the Defendants are entitled to qualified immunity. Such questions are appropriate for summary judgment since the doctrine, if applicable, confers immunity from the suit itself. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

**MEMORANDUM ORDER AND DECISION- 10**

### A)    Legality of the Search and Seizure

The Defendants here argue no constitutional violation occurred in this case because the officers had probable cause to seize the animals. (Dkt. 22 at 9.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Individuals have the right to be free from unreasonable searches in those places where the individual has an objectively reasonable legitimate expectation of privacy in the area searched. *See United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 756 (9th Cir. 2009) (citing *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)). This determination involves a two part inquiry: 1) whether the plaintiffs show they have a reasonable expectation of privacy in the areas searched or items seized; and 2) whether the plaintiffs show that society is prepared to accept the expectation of privacy as objectively reasonable. *United States v. Hoey*, 983 F.2d 890, 892 (9th Cir. 1993). Here, taking the facts of the Complaint as true, the property in question is the Patricks' residence. As such, the Patricks clearly had a legitimate expectation of privacy in the areas subject to the search in this case.[4]

---

[4] This is not a case involving the open fields doctrine. *See e.g. Dunham v. Kootenai Cnty.*, 690 F.Supp.2d 1162 (D. Idaho 2010). The open fields doctrine stands for the proposition that the Fourth Amendment's protection against warrantless searches does not extend to open fields that are usually accessible to the public as "no expectation of privacy legitimately attaches to open fields." *Oliver v. United States*, 466 U.S. 170, 177-80 (1984) (noting that even putting up a fence or a no trespassing sign does not create a legitimate expectation of privacy in open fields); *cf. United States v. Dunn*, 480 U.S. 294, 301 (1987) (the Fourth Amendment does protect the area harboring the intimate activity associated with the sanctity of a man's home and the privacies of life).

**MEMORANDUM ORDER AND DECISION- 11**

Where, as here, the Fourth Amendment's protections attach, "[a]ny 'place to be searched, and the persons or things to be seized' must be particularly described, and be supported by oath or affirmation and probable cause shown before a warrant may issue." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (quoting U.S. CONST. amend. IV). "Searches conducted without a warrant, thus, 'are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

One such exception is the plain-view rule which allows a law enforcement officer to lawfully seize evidence "which was in plain view and which the officer had probable cause to believe was evidence of a crime." *Maryland v. Buie*, 494 U.S. 325, 330 (1990). "To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent." *Dunham v. Kootenai Cnty.*, 690 F.Supp.2d 1162, 1173 (D. Idaho 2010) (quoting *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005)) (citations omitted).

As to the first element of the plain view exception, Deputy Hemphill was at the property in response to a call for a child welfare check. (Dkt. 22-5 at ¶ 6, Ex. A.) The report was an anonymous complaint regarding children living on the property without power, running water, or bathroom facilities. Upon arriving at the residence on January 7, 2009, Deputy Hemphill found two mobile home trailers. He approached each trailer in an effort to locate any individuals at the residence as a part of his investigation of the child welfare

**MEMORANDUM ORDER AND DECISION- 12**

check. In doing so, Deputy Hemphill walked next to the animal pens and made his initial observations of the animals that prompted him to call Detective Rivera and eventually led to the seizure of the animals at issue in this case. Based on these undisputed facts, the Court finds as a matter of law that Deputy Hemphill's entry upon the property and resulting search was lawful. Deputy Hemphill was lawfully upon the property for purposes of responding to the child welfare check and acted appropriately in approaching each of the trailers in an effort to accomplish that task. Thus, he was properly and lawfully in a position to see the area where the animals were located in plain view and the circumstances surrounding the animals care.

The second element of the plain view exception is satisfied when an officer has probable cause to associate the property with criminal activity. *Dunham*, 690 F.Supp.2d at 1174 (citations omitted). "The determination of whether the officers had probable cause to believe that the items seized were illegal, unlawful, or associated with criminal activity is objective, but we apply it to the 'actual and/or perceived belief of the law enforcement officer as he ... engages in search and seizure.'" *Id.* (quoting *United States v. Prim*, 698 F.2d 972, 975 (9th Cir. 1983)). "This standard does not require the officers to know that the item seized is illegal." *Id.* "The probable cause standard is a flexible, common-sense approach "requiring only that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband ... or useful evidence of a crime." *Id.* (quoting *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996)).

**MEMORANDUM ORDER AND DECISION- 13**

In this case, the observations of the animals' conditions as noted by the responding officers and investigator, which are undisputed by the Patricks, reveals that the incriminatory nature of the evidence was immediately apparent. (Dkt. 22-5.) The condition of the animals was generally poor in that they were unmaintained, thin, and underweight. Furthermore, there was no apparent source of food, water, or shelter for the animals. Given these facts, it was reasonable for the officers to believe that the animals were evidence of the crime of animal cruelty and/or neglect under Idaho Code § 25-3504 and Idaho Code § 25-3511. Under those provisions, law enforcement officers have the authority to take custody of animals subject to cruel treatment. Idaho Code §25-3504 states that:

> Every person who is cruel to any animal, or who causes or procures any animal to be cruelly treated, or who, having the charge or custody of any animal either as owner or otherwise, subjects any animal to cruelty shall, upon conviction, be punished in accordance with section 25-3520A, Idaho Code. Any law enforcement officer or animal care and control officer, subject to the restrictions of section 25-3501A, Idaho Code, may take possession of the animal cruelly treated, and provide care for the same, until final disposition of such animal is determined in accordance with section 25-3520A or 25-3520B, Idaho Code.[5]

---

[5] Idaho Code § 25-3501A states:

(1) Law enforcement agencies and animal care and control agencies that provide law enforcement or animal care and control services to a municipality or county, may enforce the provisions of this chapter in that municipality or county.

(2) Animal care and control officers enforcing this chapter shall comply with the same constitutional and statutory restrictions concerning the execution of police powers imposed on law enforcement officers who enforce this chapter and other criminal laws of the state of Idaho.

(3) In cases where production animals are subject to a violation of section 25-3504, 25-3505 or 25-3511, Idaho Code, law enforcement agencies and animal care and control agencies shall not:

(a) Enforce section 25-3504, 25-3505 or 25-3511, Idaho Code, without first obtaining an inspection and written determination from a department investigator that a violation of one (1) or more of the sections has occurred or is occurring; or

(b) Take a production animal from a production animal facility, pasture, or rangeland for a violation of section 25-3504, 25-3505 or 25-3511, Idaho Code, without first obtaining an inspection and written determination from a department investigator that such action is in the best interest of the animal.

**MEMORANDUM ORDER AND DECISION- 14**

The Idaho Code defines cruelty to mean any or all of the following:

> (a) The intentional and malicious infliction of pain, physical suffering, injury or death upon an animal;
> (b) To maliciously kill, maim, wound, overdrive, overload, drive when overloaded, overwork, torture, torment, deprive of necessary sustenance, drink or shelter, cruelly beat, mutilate or cruelly kill an animal;
> (c) To subject an animal to needless suffering, inflict unnecessary cruelty, drive, ride or otherwise use an animal when same is unfit;
> (d) To abandon an animal;
> (e) To negligently confine an animal in unsanitary conditions or to negligently house an animal in inadequate facilities; to negligently fail to provide sustenance, water or shelter to an animal.

Idaho Code § 25-3502(5). Likewise, under federal law, an officer may seize evidence of a crime that is in plain view without a warrant if the officer is lawfully present in the place from which they view the evidence. *Horton v. California*, 496 U.S. 128, 136–137 (1990).

Here, the Defendants have supplied the reports of the responding officers and investigator that were filed in the underlying state matter as well the Affidavits of all of the responding individuals that were filed in support of the Motion in this case. (Dkt. 22-3 through 22-6.) These materials reporting the circumstances as they existed on January 7, 2009 are all consistent with and corroborate one another. The reports noted that the driveway had been plowed within the last day or two and there were also several dogs running loose on the property that "appeared to be at a decent weight," "healthy," and had access to one of the trailers and water but no food. The officers reported seeing empty bags of grain in the bed of a truck on the property.

**MEMORANDUM ORDER AND DECISION- 15**

The officers initially observed: three horses in a pen, a llama in a small pen, and a pony in the pen next to the llama. Upon further inspection, the officers reported seeing a deceased horse lying in the pen with the pony whose body was covered in snow with its neck and head visible. They noted that the ears of the deceased horse "had been eaten away by something." The pony "appeared to be a decent weight, but there was no signs of food or water for the pony," it was eating the wood post by the gate and eating on a black tarp in the pen, and its hooves appeared long and unmaintained. Both the deceased horse and pony had halters on.

The llama had no water source and only a handfull of grain in a small hole in the snow. The area in which the llama was able to move in was covered in fecal matter, as was the llama's feet and legs. The report stated that the llama was unable to get out of its fecal matter without going into the deep untouched snow. Deputy Hemphill reported that the llama was "trembling and wet, had no water, and only a scattering of food remnants. It also had no shelter and the pen was covered in feces." (Dkt. 22-5 at ¶ 10.) Investigator Larsen stated that the llama's "feet were sore, as it alternated raising its feet." (Dkt. 22-4 at ¶ 7.)

In the larger pen, the officers observed four horses which were generally underweight, thin, showing their ribs and spine, appeared to be losing mass in their rump, and had long/unmaintained feet. The officers noted that the horses had no feed or water source and were eating a piece of wood.

**MEMORANDUM ORDER AND DECISION- 16**

After inspecting the animals, Investigator Larson made a written determination that the animals had been neglected and recommended that the Boise County Sheriff's Office take possession of the animals. (Dkt. 22-6 at ¶ 16.) In her Affidavit, Investigator Larson states that she believed the animals had "gone without appropriate care, and that it was neglectful to house the animals without providing appropriate food and water" and "there was no appropriate shelter for the animals to protect them from the winter weather." (Dkt. 22-4 at ¶¶ 17, 20.) Deputy Hemphill relayed these observations and conditions to the on-duty prosecutor at the Bonner County Prosecutor's Office who advised that there was no need to obtain a warrant to seize the animals. (Dkt. 22-6 at ¶ 17.) Based on all of their observations and the information known to them at the time, the officers determined they had probable cause to seize the animals and proceeded to do so. Detective Rivera contacted Dr. Cherise Neu, a veterinarian, to assist with the removal. Dr. Neu arrived and aided in the transportation of the animals and also examined the deceased horse and opined it had died from "cast" exposure, dehydration, and emaciation. (DKt. 22-6 at ¶ 19.)

While they were waiting to load the second set of animals for removal, Ms. Patrick arrived at the residence and stated the family was "struggling to buy feed" for the animals, there was no running water on the property and they had been hauling water in for the animals, she had fed the last of the food to the animals today and that hay was coming tomorrow. Ms. Patrick also stated that the deceased horse had died late the week before but did not know why and that they had plans to remove it.

**MEMORANDUM ORDER AND DECISION- 17**

Based upon these undisputed facts, the Court finds that the Defendants' warrantless seizure of the animals did not violate the Fourth Amendment in this case. The officers had probable cause to believe, based on the conditions they observed, that the animals were in danger and were evidence of the crime of animal neglect under Idaho law. Thus, the officers were authorized to seize the animals as evidence of a crime without a warrant. The Patricks do not dispute these facts and observations of the responding personnel nor point to any other evidence giving rise to a disputed fact. As such, the Court finds as a matter of law that there was no constitutional violation here as the search and seizure were both lawful.

### B) Due Process Claims

The Complaint generally alleges violations of the Patricks' due process rights as a result of the removal of the animals from their residence. (Dkt. 1 at ¶ 16.) The Defendants argue they are entitled to summary judgment on the claim because the Patricks were provided with the process afforded to them following the seizure of their animals. (Dkt. 22 at 18-20.)

To prevail in a § 1983 claim for a procedural due process violation, a plaintiff must show deprivation of a protected property or liberty interest without being given due process. *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "A section 1983 claim based upon procedural due process ... has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Here, the Patricks can likely satisfy the first and second prongs of the claim as the loss of their animals deprives them as owners of a property interest that may be taken from them only in accordance with

**MEMORANDUM ORDER AND DECISION- 18**

the Due Process Clause and the animals were taken by agents of the state. As to the third prong, however, the Court finds the Patricks have failed to identify any genuine issue of disputed fact that they were denied lack of process.

Before the state may take an individual's property, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Robinson v. Hanrahan*, 409 U.S. 38, 39–40 (1972) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (citations omitted). Here, the Idaho Code provides for an adequate post-deprivation remedy. *See* Idaho Code § 25-3520B. Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause.

An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). "'Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing prior to the deprivation of a ... property interest.'" *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1995) (internal quotations and citations omitted).

**MEMORANDUM ORDER AND DECISION- 19**

Here, under either theory, the Patricks cannot show any genuine issue of material fact that exists to support this claim. The Patricks' contention that their animals were unlawfully taken by the officers would be an unauthorized taking. That claim is not actionable under § 1983 because there are meaningful post-deprivation remedies available. As determined above, the officers had probable cause to properly seize the animals. Upon that seizure, the Patricks were then entitled to and so afforded the forfeiture process provided for under Idaho Code § 25-3520B. The Defendants have attached the notices provided to the Patricks in relation to the forfeiture of the animals and the Notice of Hearing on the forfeiture proceedings. (Dkt. 22-3.) A forfeiture hearing was held on April 4, 2009 and continued to May 21, 2009. (Dkt. 22-3, Ex. E, D.) Ultimately, the charges against the Patricks were dismissed and their animals were returned to them.

Similarly, even if the taking of the animals was an authorized taking - i.e. taken pursuant to established state procedures - the Patrick's claim is problematic. As long as the property was seized pursuant to established state regulations or statutes, and performed in the normal manner prescribed by law, no due process violation has occurred. Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Here, as determined above, the officers lawfully seized the animals in accordance with the requirements of the applicable Idaho Code. Furthermore, it is undisputed that the Patricks were afforded meaningful post-deprivation remedies which ultimately resulted in

**MEMORANDUM ORDER AND DECISION- 20**

the animals being returned to them. There was no violation of the Patricks' due process rights.

Based on the foregoing, the Court finds the Defendants have shown the Patricks were afforded meaningful post-deprivation remedy consistent with the procedural due process rights that the Patricks were entitled to. The Patricks have not disputed these facts nor pointed to an genuine issue of material fact on this claim. As such, the Court finds that the Defendants' moving papers are sufficient to have facially demonstrated that there is no genuine issue of material fact and that judgment as a matter of law is appropriate on this claim.

### C)      Equal Protection Claims

The Complaint also makes a general allegation of a violation of the Patricks' equal protection rights. (Dkt. 1.) "To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted). There is no allegation or evidence from which to conclude that the Defendants in this case acted in a discriminatory manner or that any such discrimination was intentional. The Complaint makes no allegation that the Patricks were treated differently from other similarly situated individuals. Accordingly, the Court finds summary judgment on this claim is appropriate.

**MEMORANDUM ORDER AND DECISION- 21**

**D)      Municipal Liability**

Finally, the Complaint raises a claim against Bonner County, a/k/a the Bonner County Sheriff's Department. The Supreme Court has held that "local governing bodies [...] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [...] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). In order to hold a municipality liable the Patricks must show evidence "that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (citations omitted). The burden is on the Patricks to show a policy or custom on the part of the Bonner County Sheriff's Department, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). If a plaintiff cannot show evidence of a direct policy or a widespread custom, the plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette* 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986)).[6]

---

[6] The Ninth Circuit established the elements that a plaintiff would have to show in order to evidence a custom through deliberate indifference:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right;

**MEMORANDUM ORDER AND DECISION- 22**

However, the Supreme Court has made clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis in original). Where, as here, there is no constitutional violation by the officers, there can be no municipal liability. The Supreme Court has held that no principle "authorizes the award of damages against a municipal corporation when […] the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This rule applies regardless of the actual policies of the municipality. *Id*. ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Because the Court has concluded above that no constitutional violation occurred, the Motion will be granted as to the claims against the Bonner County Sheriff's Department.

### E)    Qualified Immunity

While § 1983 provides a cause of action against police officers for constitutional violations that they might have committed, they are also entitled to qualified immunity from § 1983 claims. "The Supreme Court has held that 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'" *Crowe v. Cnty. of San Diego*,  608 F.3d 406, 433 -434 (9th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "When that happens, the officials 'should not be held personally liable.'" *Id.* Qualified immunity operates to "shield an officer from

---

and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 384-91 (1989). (citations omitted).

**MEMORANDUM ORDER AND DECISION- 23**

personal liability when an officer reasonably believes that his or her conduct complies with law." *Pearson*, 555 U.S. at 244; *see also San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) ("Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Similarly, the Ninth Circuit has "held that officers are immune from suit 'when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they 'cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.'" *Crowe*, 608 F.3d at 434 (citations omitted).

The qualified immunity analysis follows a two-pronged analysis first announced in *Saucier v. Katz*, 533 U.S. 194 (2001):

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right? Second, if so, was that right clearly established? The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.

*San Jose Charter of Hells Angels*, 402 F.3d at 971 (internal quotations and citations omitted).

The court in *Pearson* has since rejected the mandatory two-step approach. *Peterson*, 129 S.Ct. at 818; *see also Nampa Classical Acad. v. Goesling*, 714 F.Supp.2d 1079, 1091 at n.

**MEMORANDUM ORDER AND DECISION- 24**

15 (D. Idaho 2010). Courts are now free to decide either question in whatever order is most appropriate given the circumstances.

Here, the Court has determined above that no constitutional violation occurred. The Defendants' moving papers are sufficient to establish that, on their face, there does not exist any genuine issue of material fact in this case. The officers were lawfully upon the property, the search was reasonable, and based on the officers' observations it was reasonable for them to believe they had probable cause to seize the animals. Again, the Patricks have not disputed the facts giving rise to that determination nor pointed to any genuine issue of fact that exists. Therefore, the Court finds the Defendants are entitled to qualified immunity.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Defendants' Motion for summary judgment (Dkt. 22) is **GRANTED** as to all of Plaintiffs' claims.  Counsel for Plaintiff shall submit a proposed judgment to the Court's email box, EJL_Orders@id.uscourts.gov, for its review and entry.

DATED:  **June 13, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER AND DECISION- 25**